## ANONYMOUS.

1. The act, "to regulate the proceedings of the Court of Errors and Appeals," was not designed to authorize the issuing of any other writs out of that court, than such as it had been customary to issue previous to the passage of the act.

2. Writs of error, to the Supreme Court from the Court of Errors and Appeals, must still be issued out of the Court of Chancery.

It being intended to bring writs of error to this Court from the Court of Errors and Appeals, the direction of the court was sought as to the practice to be pursued. Doubts were expressed by the counsel, as to the correct practice, since the " Act to regulate the proceedings of the Court of Errors and Appeals, passed April 5th, 1845." The 9th section of that act directs that, " The writs and process shall be signed by the clerk, and tested in the name of the President." Previous to the passage of that act, the practice had been to issue writs of error returnable to the Court of Errors and Appeals, out of the Court of Chancery ; in cases requiring a special allowance, application being made to the chancellor for that purpose.

PER CURIAM. The language of the 9th section of the act referred to is ambiguous, and can scarcely be so construed as to alter the former practice, in relation to the allowance and teste of these writs.

The former practice is still the correct practice. The words of that section are complied with, and receive a reasonable construction by restricting them to such writs, as, according to the former practice of the Court of Errors and Appeals, issued out

Anonymous.

of that court:—such as writs of *supersedeas,* writs of *certiorari,* to bring up the out branches of the record, and the like.

*Note.*—This construction of the act was subsequently recognized and adopted by the Court of Errors and Appeals.

At the term of July, 1845, in the case of the *State* v. *Gardiner,* upon affirmance of the judgment of the Supreme Court, the counsel for the defendants in error asked the direction of the court, as to remitting the record. The court directed that the record should be remitted to the Supreme Court, to be proceeded on according to law;* and held that the act of the 5th of April 1845, was not designed to change the practice of the courts in relation to writs and process; and that the 9th section only applied to such writs as it had been customary to issue out of that court previous to the passage of the act.

* If judgment be affirmed by the Lords, the judgment of affirmation is entered upon the transcript and a *remittitur* entered thereupon; and the record delivered back to the King's Bench, to proceed with execution. 3 *Bac. Abr.* "*Error*," *D.* 2.

CITED *in Gardner* v. *State, note,* 1 *Zab.* 561